WATKINS, Judge.
Mrs. Adell Burnett, a Licensed Practical Nurse employed at E.A. Conway Memorial Hospital, Monroe, was suspended from employment at Conway and subsequently terminated because of alleged gross negligence in the treatment of a patient, Mrs. Luebirta Jones, which resulted in that patient’s death. Mrs. Burnett appealed to the Civil Service Commission. An appeal was taken by Mrs. Burnett from the suspension and subsequently from the termination, and while these two proceedings are contained in separate records, they were consolidated for the purposes of hearing before the Civil Service Commission and appeal to this court. The Civil Service Commission affirmed both the suspension and the termination. We affirm the determination of the Civil Service Commission.
There is no dispute as to the facts. The facts leading up to the suspension and termination are well set forth in the letter of termination, which counsel for Mrs. Burnett admitted accurately sets forth the facts (although he refused to concur in the inference of negligence drawn by the appointing authority therefrom). We quote from the termination letter dated November 20, 1980, in full:
“This letter is to advise you that you are being terminated from your position as Licensed Practical Nurse at E.A. Conway Memorial Hospital pursuant to authority contained in Civil Service Rule 12.3. The effective date of this termination is seven days from the date this *247letter was mailed, which date of mailing is the same as the date of this letter, or your actual receipt of the letter, whichever comes first.
The reasons for your termination are that you failed to meet the standards to which you must be held as a Licensed Practical Nurse in the following particulars:
I. In your required supervision of the nursing care of Mrs. Luebirta Jones on August 27,1980 at E.A. Conway Memorial Hospital, particularly the tube feeding of Mrs. Jones, you failed to notice that Mrs. Jones was receiving acetone or another foreign poisonous substance, through her feeding tube on that date.
II. Your failure on August 27,1980 to read the label on both the bottle that contained, or had contained, the substance being tube fed to Mrs. Jones when you removed that bottle from Mrs. Jones’ bedside tube-feeding system at approximately 5:00 p.m. on that date and on the bottle that you placed back into Mrs. Jones’ tube feeding system shortly after your aforementioned removal of a bottle from that system.
III. Your failure on August 27, 1980 at approximately 5:00 p.m. to ascertain the true content of one or both of the bottles referred to in Paragraph II immediately above.
IV. Your failure on August 27, 1980 at approximately 5:00 p.m. to notice an odor emanating from one or both of the bottles referred to in Paragraph II immediately above and to recognize that odor as not being consistent with the contents of the bottle or bottles required by Mrs. Jones’ doctor’s orders, or, alternatively, your failure on that date at that time to recognize the odor emanating from one or both of those bottles as not being consistent with the contents of those bottles as required by Mrs. Jones’ doctor’s orders.
V. Your failure on August 27, 1980 to follow the orders of Mrs. Luebirta Jones’ doctor, which order had been on Mrs. Jones’ chart since on or about August 21, 1980, requiring the tube feeding of Isocal at full strength in that you caused the tube fed Isocal to be diluted by approximately one-half on that date at approximately 5:00 p.m.
VI. Your violation of hospital policy and sound nursing practice and procedure in directing your subordinate, Gwen Rogers, Nurses Aide, to hang for use without supervision Mrs. Loubertia (sic) Jones’ tube feeding bottle on August 27, 1980, at approximately 5:00 p.m. at E.A. Conway Memorial Hospital.
VII. Your violation of hospital policy and sound nursing practice and procedure in allowing your daughter and one of her friends to visit you while you were on duty at E.A. Conway Memorial Hospital on August 27, 1980, between 3:00 p.m. and 6:00 p.m.
You may appeal this action to the Civil Service Commission within 30 days. The appeal must conform to the provisions of Chapter 13 of the Civil Service Rules.
Sincerely, /s/ Roy D. Bostick Administrator”
As counsel for Mrs. Burnett has conceded the facts as stated in the letter of termination are correct, we find the conclusion inescapable that Mrs. Burnett was guilty of gross negligence in permitting a poisonous substance to be administered to a patient entrusted to her care. To permit her continued employment at the hospital would be to endanger the lives of present and future patients at that hospital.
In argument before this court, Mrs. Burnett does not contest the facts. Her defenses are twofold, (1) that the letters of suspension and termination did not precisely set forth the nature, time, and date of the alleged improper conduct, thus denying her the opportunity to prepare an adequate defense; and (2) that she was denied procedural due process under the Fourteenth Amendment to the United States Constitution because she was not given a pre-sus-pension and pre-termination hearing.
*248As we stated in Major v. Louisiana Department of Highways, 333 So.2d 316 (La.App. 1st Cir.1976), under Civil Service Commission rules and due process requirements, an employee of the state against whom disciplinary action is taken in the form of removal, demotion, or reduction in pay must be informed of the nature of the charges against him so that he can rebut the charges in the event, on appeal to the Civil Service Commission, the appointing authority makes out a prima facie case against him. Times, dates, and names must be so set forth in detail in the letter of notification.
It is evident from mere cursory perusal that the letter of termination addressed to Mrs. Burnett fully informed her of all alleged negligent acts, dates, times, and persons. Thus, that letter met the requirements of a letter of dismissal as set forth by us in Major.
The letter of suspension dated August 28, 1980, is somewhat less detailed. It reads as follows:
“Pursuant to the authority contained in Civil Service Rule 12.2 you are hereby suspended from your position as Licensed Practical Nurse without pay, effective immediately pending an investigation into allegations against you. These allegations include, but are not limited to a preliminary investigation into the death of patient # 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 on August 27, 1980. The investigation conducted by the Director of Nurses which included a personal interview with you has revealed unacceptable departures from nursing standards relating to the preparation and administration of a tube feeding given to this patient on August 27, 1980. It has further been determined that you were the nurse responsible for the tube feeding in question.
You are hereby expressly advised that there may be additional allegations, charges, and/or disciplinary actions brought against you as a result of the continuing and extensive investigation being conducted by the Office of Hospitals, E.A. Conway Memorial Hospital. Nevertheless, we are herewith furnishing you with as many details as we presently can of the allegations which form the basis of and require your suspension. You are also hereby advised that your suspension is for the duration of the investigation and the time required by this office to review all aspects of this matter and make a final determination in your case. However, as prescribed by Civil Service Rule 12.2, your suspension period will not exceed 90 days, without approval from the Direction of Civil Service. Should the Agency find after investigation that disciplinary action is not warranted, the suspension will be terminated and you may be reinstated and reimbursed for time lost.
Sincerely, /s/ Roy D. Bostick Administrator”
However, the number of the patient, the date of death of the patient, and the date and nature of the alleged negligent conduct of Mrs. Burnett, the Licensed Practical Nurse being placed under suspension, are set forth in the letter. The requirements of Major have been met. Furthermore, if the letter is rather more brief than the letter of termination, it must be noted that the letter of suspension was dated August 28, 1980, one day after the alleged negligent conduct and the patient’s death. Clearly, prompt action was required to prevent a possible repetition of the same negligent conduct and tragic outcome. We find that each of the two letters met the constitutional and Civil Service requirements as set forth in Major.
Mrs. Burnett contends further that she was entitled to a pre-suspension and pre-termination hearing under the Fourteenth Amendment to the United States Constitution, and that the denial thereof was a denial of property violative of procedural due process requirements. However, under the holding of the United States Supreme Court in Barry v. Barchi, 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979), a pre-sus-pension hearing (and presumably a pre-ter-*249mination hearing, by analogy) is not constitutionally mandated if a timely post-suspension hearing is assured. Similarly, Stenseth v. Greater Fort Worth and Tarrant County Community Action Agency, 673 F.2d 842 (5th Cir.1982), holds that a terminated employee is not entitled to a pre-ter-mination hearing so long as adequate hearing is given after termination.
In the present case, Mrs. Burnett was not assured a timely post-termination hearing. Rule 13.15 of the Louisiana Civil Service Commission provides merely that hearings of appeals shall be heard “as far as practicable ... in the order in which docketed.... ” There is no requirement that the hearing be held promptly. Indeed, in the present case, the suspension letter is dated August 28, 1980, and the termination letter is dated November 20, 1980; yet, the hearing before the Civil Service Commission did not take place until November 4, 1981.
However, as we have stated, at the hearing counsel for Mrs. Burnett freely admitted all of the factual allegations contained in the letter of dismissal. She, thus, cannot say she was denied adequate hearing under Stenseth. Furthermore, the entire proceedings in the hearing in addition to counsel’s admission of facts established negligence. Even if a hearing had taken place more promptly, the facts, regardless of when admitted, would have led to the same inescapable finding of negligence. As the finding of negligence was inescapable, the same result, the Commission’s affirming suspension and termination, would have been reached.
Thus, Mrs. Burnett suffered no injury, her termination resulted from her own gross negligence, and she has no valid complaint concerning the constitutional validity of the proceedings brought for her suspension and termination. To invoke the Fourteenth Amendment to require an earlier hearing when Mrs. Burnett in effect admits her own fault would be to carry the effect of the Fourteenth Amendment to an absurd result, and make constitutional liberties and property rights as interpreted by the courts an object of mockery and derision. Mrs. Burnett sustained no unconstitutional deprivation of liberty or property. She was denied no rights.
The action of the Civil Service Commission in affirming Mrs. Burnett’s suspension and termination is affirmed, at appellant’s cost.
AFFIRMED.
SHORTESS, J., concurs. Regardless of whether or not appellant was entitled to a “timely” hearing, in this case it was an adequate hearing.